**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-cv-20589-KMM

JENNIFER L. COOK,

    Plaintiff,

v.

MAXIMUS INTERNATIONAL
SPECIALISTS,

    Defendant.
_____/

**REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon Plaintiff Jennifer L. Cook's ("Plaintiff") *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 6), filed pursuant to 17 U.S.C. § 501, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a). The matter has been referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law with respect to the Motion for Temporary Restraining Order. (ECF No. 13). Having considered the *Ex Parte* Application for Entry of Temporary Restraining Order, the record as a whole, and being otherwise fully advised, the undersigned **RECOMMENDS** that the *Ex Parte* Application for Entry of Temporary Restraining Order be **GRANTED, in part.**

I.  **BACKGROUND**

The following factual background is taken from Plaintiff's Complaint (ECF No. 1), the Application (ECF No. 6), and a review of the supporting evidentiary submissions and exhibits.

Plaintiff is a visual artist and sculptor who creates art depicting animals and frequently draws inspiration for her art from reptiles, specifically snakes. (ECF No. 6-2 ("Cookson Decl.") at ¶ 4). In 2019, Plaintiff created a three-dimensional work entitled "Matched Pair of Rattlesnake Entrance Sculptures" (the "Work"). (*Id.* ¶ 13). Plaintiff registered the Work with the United States Register of Copyrights; the Work was assigned registration number VA 2-267-344. (*Id.* ¶ 14); *see also* (ECF No. 1-1).

Plaintiff is also the owner of all rights in various federally registered trademarks, including: No. 6,713,263 SNAKEARTS and No. 6,846,446 SNAKE ARTS (together, the "SNAKEART Marks"); and No. 6,713,264 JL COOK and No. 6,746,836 JL COOK (together, the "JL COOK Marks"). (Cookson Decl. ¶¶ 17–20); *see also* (ECF Nos. 1-5, 1-6, 1-7, 1-8). The SNAKEART Marks and the JL COOK Marks are used in connection with the manufacture and distribution of Plaintiff's sculptures and art pieces. (Cookson Decl. ¶ 21).

Plaintiff attests based on her online research that Defendant is an Indian company that operates online stores selling replicas of art created by other artists without those artists' permission. (*Id.* ¶¶ 42–44). Plaintiff avers that Defendant operates these online stores on Amazon.com, Etsy.com, Facebook, and eBay. (*Id.* ¶¶ 45–47). According to Plaintiff, Defendant has never been licensed to use the Work, the SNAKEART Marks, or the JL COOK Marks for any purpose. (*Id.* ¶¶ 49–50). Plaintiff avers that Defendant has also never been authorized to copy, distribute, or display the Work. (*Id.* ¶ 55). But Plaintiff's anticounterfeiting investigation program

revealed that Defendant copied the Work without Plaintiff's permission, selling counterfeit copies of the Work on the internet on online marketplaces at low prices. (*Id.* ¶¶ 50–54, 56).

Specifically, Plaintiff investigated the promotion and sale of Defendant's counterfeits of the Work to obtain payment account information for receipt of funds paid to Defendant. (*Id.* ¶ 57); (ECF No. 6-1 ("Rothman Decl.") at ¶ 9). Plaintiff attests that this investigation has revealed that Defendant is using online stores on Amazon, eBay, and Etsy to sell counterfeits of the Work from India and China to consumers in the United States. (Cookson Decl. ¶ 58).

Plaintiff or someone acting on Plaintiff's behalf accessed Defendant's online stores on Amazon and Etsy and was able to view counterfeits of the Work, add products to the online shopping cart, and proceed to a point of checkout. (*Id.* ¶ 60). Detailed webpage captures were also obtained, depicting Defendant's counterfeits of the Work offered for sale on Amazon and Etsy. (*Id.* ¶ 61); (ECF No. 1-2); (Rothman Decl. ¶¶ 10–11). Plaintiff avers that test purchases were placed, and the products received as a result were confirmed to be counterfeits of the Work, not authorized by Plaintiff. (Cookson Decl. ¶¶ 62–63).

According to Plaintiff, Defendant's listings for its counterfeits of the Work also create a false association between Plaintiff's Work and Defendant's counterfeits. (*Id.* ¶ 70). Plaintiff attests that Defendant describes its counterfeits in terms identical to the terms Plaintiff uses to describe the Work. (*Id.* ¶ 65). Moreover, searching "Snake Arts" and "JL Cook" on Google directs consumers to Defendant's online storefronts selling counterfeits of the Work on Etsy. (*Id.* ¶ 66). Thus, Plaintiff avers that Defendant is using Plaintiff's SNAKEART Marks and JL COOK Marks in connection with listing counterfeits of the Work on Defendant's online storefronts, competing

3

with Plaintiff for space in online search engine search results and undermining Plaintiff's ability to market the Work to consumers. (*Id.* ¶¶ 67–69).

On February 14, 2023, Plaintiff filed the Complaint (ECF No. 1) against Defendant, asserting claims for federal copyright infringement, federal trademark infringement, false designation of origin, common law unfair competition, common law trademark infringement, and misrepresentation and fraud under 17 U.S.C. § 512.

Now, Plaintiff asks the Court to enter a Temporary Restraining Order ("TRO"), an order restraining the financial accounts used by Defendant, and upon the expiration of the TRO, a preliminary injunction, based on Defendant's alleged copyright infringement.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(b), the Court may enter a TRO. Fed. R. Civ. P. 65(b). To obtain a TRO, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo,* 403 F.3d 1223, 1225–26 (11th Cir. 2005). Additionally, Rule 65 provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party of its attorney only if:
> (A)   specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B)   the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 439 (1974).

**III.   DISCUSSION**

Plaintiff seeks the entry of a TRO based on Defendant's infringement of Plaintiff's copyrighted Work.

The Court finds that Plaintiff has made a sufficient showing warranting the entry of a temporary restraining order on an *ex parte* basis. Pursuant to Federal Rule of Civil Procedure 65(b)(1), the following specific facts, as set forth in Plaintiff's Complaint, the Application, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendant can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted: (a) Defendant is a foreign business entity based abroad in India, who operates its business on the internet; (b) Defendant has the ability to change the ownership of or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other sellers, and transfer assets and ownership; and (c) Defendant can in a short span of time electronically transfer and secret funds sought to be restrained upon obtaining advance notice of Plaintiff's Application for TRO, thereby thwarting Plaintiff's ability to obtain meaningful relief.

Moreover, Plaintiff has satisfied the requirements for the entry of a TRO.

First, Plaintiff has demonstrated a substantial likelihood of success on the merits of her copyright infringement claim. To prevail on a claim for copyright infringement, Plaintiff must

show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

To satisfy the first prong, Plaintiff must prove that the Work is original and that Plaintiff complied with applicable statutory formalities. *See id.* (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)). Under 17 U.S.C.§ 410(c), a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright" in any judicial proceeding. 17 U.S.C. § 410(c); *see also Bateman*, 79 F.3d at 1541.

The second prong, copying, "comprises two subparts, 'factual and legal copying[.]'" *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020). For factual copying, the question is "whether the defendant actually used the plaintiff's material," which may be shown by direct evidence or inferred from indirect evidence. *Id.* (quoting *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1148 n.40 (11th Cir. 2007)). Legal copying occurs when "those elements of the [copyrighted work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *Id.* at 1302 (quoting *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1300 (11th Cir. 2008)) (alterations in original). "In most cases, a 'substantial similarity between the allegedly offending [work] and the protectable, original elements of the copyrighted works' establishes actionable copying." *Id.* (quoting *Bateman*, 79 F.3d at 1542) (internal quotation marks omitted). The standard is whether "an average lay observer would recognize the alleged copy as having been

appropriated from the copyrighted work." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1266 (11th Cir. 2001) (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000)).

Here, as to the first prong Plaintiff has adduced *prima facie* evidence of her ownership of the copyrighted Work via the Certificate of Registration for the Work attached to the Complaint. *See* (ECF No. 1-1). As to the second prong, visual inspection of the Work and Defendant's alleged counterfeit side-by-side reveals that they are substantially similar. *See* (Cookson Decl. ¶ 51). Accordingly, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on the merits with respect to her copyright infringement claim.

Second, Plaintiff is likely to suffer immediate and irreparable injury in the absence of a TRO. As has been explained in other cases in this District:

> In the past, a showing of likelihood of confusion was adequate, by itself, to constitute irreparable harm. *See Ferrellgas Partners, LP v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) (citing *McDonald's Corp.*, 147 F.3d at 1310); *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985). However, this presumption has been called into question, and instead a plaintiff must establish some basis to find irreparable harm. *See N. Am. Med. Corp. v. Axiom Worldwide*, 522 F.3d 1211, 1227–28 (11th Cir. 2008) (discussing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)); *see also Adidas AG, et al. v. Adidacrazylight2.com, et al.*, 2013 WL 1651731, at *7 (S.D. Fla 2013); *Chanel, Inc. v. Douglas Mesadieu*, 2009 WL 2496586, at *7 (M.D. Fla 2009).

*S.A.S. Jean Cassegrain v. accessoiresnet.info*, No. 17-61593-CIV, 2017 WL 10743018, at *4 (S.D. Fla. Aug. 18, 2017) (Middlebrooks, J.).

Here, Plaintiff attests that her goodwill, reputation, brand confidence, and market share are irreparably damaged by Defendant's sale of counterfeits of the Work; Plaintiff contends that Defendant's marketing and sale of unauthorized counterfeits takes away her ability to assure quality control, creates confusion among consumers, and causes consumers to believe that Plaintiff offers low quality products. (Cookson Decl. ¶¶ 77–85); *see Ferrero v. Associated Materials Inc.*,

7

923 F.2d 1441, 1449 (11th Cir. 1991) (quoting *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir. Unit A 1981)) (stating that "the loss of customers and goodwill is an 'irreparable' injury").

Third, the potential harm to Defendant in restraining its trade in counterfeit and infringing goods if a TRO is issued is far outweighed by the potential harm to Plaintiff, her reputation, and her goodwill as a manufacturer and distributor of the Work. Defendant suffers no legitimate hardship because Defendant is not authorized to engage in its allegedly infringing activities. Therefore, the potential harm to Plaintiff's reputation and goodwill outweighs the potential harm to Defendant of restraining Defendant's trade in counterfeits of the Work.

Fourth, Plaintiff argues that the public interest is served by the entry of a TRO because "Plaintiff loses valuable incentives to continue to create graphic designs and related products if it continues to be deprived of (1) control over its content, (2) how and where the content gets distributed, and (3) potential revenue sources." (ECF No. 6 at 12). Notwithstanding that the Application uses stock argument and refers to Plaintiff, who is an individual, as "it," the public interest indeed favors the issuance of a TRO to protect Plaintiff's copyright interests. *See Vergara Hermosilla v. The Coca-Cola Co.*, 717 F. Supp. 2d 1297, 1306 (S.D. Fla. 2010), *aff'd sub nom. Hermosilla v. Coca-Cola Co.*, 419 F. App'x 917 (11th Cir. 2011) (Moore, J.) (finding that the public interest "will be served by granting a partial injunction because artists who provide valuable services such as translation of lyrics will know their work will be protected").

Further, Plaintiff requests that the Court enter an order requiring the identification of Plaintiff's payment accounts and temporarily limiting the transfer of Defendant's unlawfully gained assets. (ECF No. 6 at 13). Under 17 U.S.C. § 504, Plaintiff may be entitled to recover the profits gained through Defendant's distribution and sales of counterfeits of the Work. 17 U.S.C.

8

§ 504(a); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (recognizing the district court's authority to order that assets be frozen in trademark infringement cases seeking an award of the infringer's profits, under 15 U.S.C. § 1117, to assure the availability of a permanent relief); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). The affidavits attached to Plaintiff's *Ex Parte* Application establish that immediate and irreparable injury, loss, or damage will result to Plaintiff before Defendant can be heard in opposition. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendant has violated federal copyright laws, Plaintiff has good reason to believe Defendant will hide or transfer its ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, the Court finds that there is good reason to believe Defendant will hide or transfer its ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.  RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff Jennifer L. Cook's *Ex Parte* Application for Entry of Temporary Restraining Order (ECF No. 6) be **GRANTED, in part**.

The undersigned further **RECOMMENDS** that the District Court enter an order granting Plaintiff's Application and temporarily restraining Defendant as follows:

1. Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing or using the copyrighted Work, or any substantially similar works, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the copyrighted Work, or any substantially similar works; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the copyrighted Work, or any substantially similar works; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, Defendant, including, but not limited to, any assets held by or on behalf of Defendant;

    c. From copying, displaying, distributing, or creating derivative works of Plaintiff's copyrighted Work.

  2. Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the copyrighted Work, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by Defendant.  This Order is limited to Defendant's listings using the copyrighted Work or substantially similar works, on or in connection with all Internet based e-commerce stores owned

and operated, or controlled by Defendant, including the Internet based e-commerce stores operating on Amazon.com and Etsy.com.

3. Defendant shall not transfer ownership of its e-commerce stores during the pendency of this TRO.

4. Upon receipt of notice of this Order, Defendant and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon Payments, Inc. ("Amazon"), PayPal.com, Inc. ("PayPal"), and Etsy.com, Inc. ("Etsy") and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with Defendant; (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; and (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto.

5. Upon receipt of notice of this Order, Defendant and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon, PayPal, and Etsy, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to.

6. No funds restrained by this Order shall be transferred or surrendered by Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, PayPal, Etsy, and their related companies and

affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

7. Defendant may not transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, PayPal, Etsy, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

8. Defendant or any financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

9. This Order shall remain in effect for **FOUTEEN (14) DAYS** unless before that time the Court, for good cause, extends it for a like period or Defendant consents to a longer extension.

10. Pursuant to 17 U.S.C. § 503(a)(3) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of **TWENTY THOUSAND DOLLARS AND ZERO CENTS ($20,000.00)**, as payment of damages to which Defendant may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

11. Defendant shall have **FIVE (5) BUSINESS DAYS** to comply with this Temporary Restraining Order following notice.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of

Florida, within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, on this 13th day of March, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:     Honorable K. Michael Moore
        Counsel of Record