UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-20589-KMM

JENNIFER L. COOK,

    Plaintiff,

v.

MAXIMUS INTERNATIONAL SPECIALISTS,

    Defendant.
_____/

## ORDER

THIS CAUSE came before the Court upon Plaintiff Jennifer L. Cook's ("Plaintiff") *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Mot.") (ECF No. 6).  The Court referred the Motion to the Honorable Lauren F. Louis, United States Magistrate Judge, "to take all necessary and proper action as required by law with respect to the Motion for a Temporary Restraining Order." (ECF No. 13).  Magistrate Judge Louis issued a Report and Recommendation recommending that the Motion be GRANTED IN PART.  ("R&R") (ECF No. 20).  Plaintiff filed an objection ("Objs.") (ECF No. 22).  Defendant Maximus International Specialists d/b/a Replicartz ("Defendant") did not file an objection or response, and the time to do so has passed.  The matter is now ripe for review.  As set forth below, the Court ADOPTS the R&R.

**I.   BACKGROUND**[1]

Plaintiff is a visual artist and sculptor. Compl. ¶ 2.  In 2019, Plaintiff created a three-dimensional piece of art entitled "Matched Pair of Rattlesnake Entrance Sculptures" (the "Work"). *Id.* ¶ 15.  Plaintiff registered the Work with the Register of Copyrights on June 16, 2021, and was assigned the registration number VA 2-267-344. *Id.* ¶ 16.

---

[1] The following facts are taken from the Complaint.  ("Compl.") (ECF No. 1).

Plaintiff alleges that Defendant, a foreign corporation based in India, has never been licensed to use the Work for any purpose. *Id.* ¶ 18. Nonetheless, Defendant copied and distributed Plaintiff's copyrighted Work without Plaintiff's permission. *Id.* ¶ 20. Plaintiff further asserts that Defendant "is promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights [] through at least the Internet based e-commerce stores it operates on marketplaces like Amazon.com." *Id.* ¶ 32.

After discovering the infringement, and pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512, *et. seq.*, Plaintiff sent a take down notice to non-party Amazon, Inc. ("Amazon"), demanding that Amazon remove the infringing content from its search index and inform Defendant that it is infringing on Plaintiff's copyright. *Id.* ¶ 25; Ex. 3. Pursuant to the statutory scheme, Defendant responded by serving a counter-notice on Amazon to contest the accuracy of the initial notice. *Id.* ¶ 26.

To be effective, the counter-notice must contain certain things including: "the subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of the Federal District Court ... and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person." § 512(g)(3)(D). Defendant's counter-notice included such language and contested Plaintiff's claim that Defendant was infringing on Plaintiff's copyright. Compl. Ex. 4. However, Plaintiff alleges that the statements in the counter-notice "are materially false and defendant lacks a subjective good faith belief in the false statements contained therein." *Id.* ¶ 27.

Plaintiff then instituted this Action. *See generally, id.* Now, Plaintiff asks the Court to enter a TRO, an order restraining the financial accounts used by Defendant, and a preliminary injunction upon the expiration of the TRO. *See generally* Mot. The Court referred the Motion to

Magistrate Judge Louis, who entered an R&R recommending the Court grant Plaintiff's Motion to the extent that it requests a TRO. *See* R&R. As a threshold matter, the Court notes that while the Motion requests a TRO and a preliminary injunction, the R&R only addresses the TRO. This Order will first address Magistrate Judge Louis's findings. Then this Order will address Plaintiff's request for a preliminary injunction.

## II.     LEGAL STANDARD

### A. Report and Recommendation

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

Yet when a party has failed to object or has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

### B. Temporary Restraining Order/Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65, the Court may enter a TRO or preliminary injunction. Fed. R. Civ. P. 65(a)-(b). To obtain a TRO or a preliminary injunction, a party must

3

demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–1226 (11th Cir. 2005) (citation omitted).

### III.   DISCUSSION

In the R&R, Magistrate Judge Louis finds that Plaintiff demonstrates (1) a likelihood of success on the merits, (2) that she would suffer irreparable injury absent the TRO, (3) the threatened injury outweighs the harm that the TRO would inflict on Defendant, and (4) that entry of the TRO would serve the public interest. *See generally* R&R. Accordingly, the R&R recommends this Court grant Plaintiff's Motion to the extent it requests the TRO. R&R at 9. Magistrate Judge Louis does not recommend granting Plaintiff's Motion at this time to the extent it requests a preliminary injunction. *Id*.

**1. Temporary Restraining Order**

In the R&R, Magistrate Judge Louis finds that Plaintiff demonstrate a substantial likelihood of success on the merits because: (1) Plaintiff has adduced *prima facie* evidence of her ownership of the copyrighted Work via the Certificate of Registration for the Work attached to the Complaint; and (2) visual inspection of the Work and Defendant's alleged counterfeit side-by-side reveals that they are substantially similar. R&R at 7.

Next, Magistrate Judge Louis finds that Plaintiff is likely to suffer immediate and irreparable injury in the absence of a TRO. *Id*. at 7. Specifically, the R&R notes that "Plaintiff attests that her goodwill, reputation, brand confidence, and market share are irreparably damaged by Defendant's sale of counterfeits of the Work; Plaintiff contends that Defendant's marketing and sale of unauthorized counterfeits takes away her ability to assure quality control, creates confusion among consumers, and causes consumers to believe that Plaintiff offers low quality products." *Id*.

Magistrate Judge Louis also finds that the potential harm to Defendant—in restraining its trade in counterfeit and infringing goods—if a TRO is issued is far outweighed by the potential harm to Plaintiff, her reputation, and her goodwill as a manufacturer and distributor of her Work. *Id*. at 8.  Lastly, the R&R finds that the public interest favors the issuance of a TRO to protect Plaintiff's copyright interests.  *Id*. at 8.

The Court received no objections to the aforementioned findings in the R&R.  Upon a review of the record, the Court finds no clear error with Magistrate Judge Louis's findings.

**2. Preliminary Injunction**

Magistrate Judge Louis declined to recommend that this Court grant Plaintiff's Motion to the extent it requests a preliminary injunction.  *Id*. at 9.  Plaintiff filed a limited objection, arguing that because Defendant has defaulted in this matter, a hearing is not necessary before the Court enters a preliminary injunction.  Objs. at 1.

Unlike a TRO, a preliminary injunction requires notice to the adverse party and a hearing. *See* Fed. R. Civ. P. 65(a).  "In this Circuit, Rule 65 has been interpreted to require that a party have notice of the motion and hearing" before a Court enters a preliminary injunction against a Defendant.  *Richemont Int'l SA v. Individuals, Bus. Entities, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-CV-61064, 2022 WL 2116921, at *7 n.8 (S.D. Fla. June 10, 2022).

Plaintiff asserts that Defendant is not entitled to a hearing before the Court enters a preliminary injunction in the Instant Action.  Objs. at 1.  Namely, Plaintiff argues that: (1) she served Defendant with the Summons and Complaint pursuant to 17 U.S.C. § 512(g)(3)(D); (2) Defendant has failed to respond or appear in this matter and the time to do so has passed; and (3) the Clerk of Court entered default as to Defendant.[2]  *Id*.  Plaintiff argues that a hearing is not

---

[2] The Clerk of Court has since vacated the Clerk's Entry of Default as to Defendant.  *See* ECF No. 19.

necessary before the Court enters a preliminary injunction because Defendant has notice of the Instant Action and has failed to appear. *Id.* at 2.

The Court disagrees with Plaintiff's argument. Plaintiff's argument relies on her having properly served Defendant. In her Motion for Default Judgment, Plaintiff states that she served Defendant "by emailing defendant [the Summons and Complaint] to the email addresses set forth in the defendant's counternotice attached to the Complaint as Exhibit 4, which are ip-inforequest@amazon.com; azim@replicartz.com." (ECF No. 18 at 1). Plaintiff adds that "[s]ervice in this manner is authorized by 17 U.S.C. § 512(g)(3)(D)." *Id.*

17 U.S.C. § 512(g)(3)(D) provides that a counter-notice must include certain information, including a statement that the "subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person." The Court interprets Plaintiff's Motion as arguing that because Defendant sent the counter-notice to Amazon, which included the statement that Defendant would "accept service of process" from Plaintiff, that Plaintiff need not conform to the Federal Rules of Civil Procedure when serving Defendant. However, Plaintiff provides no argument or supporting legal authority suggesting that a Defendant who files a counter-notice pursuant to 17 U.S.C. § 512(g)(3)(D) waives formal service of process requirements. Although the counter-notice filed by Defendant stated that Defendant would accept service of process from Plaintiff, the counter-notice did not state that Defendant waived formal service requirements. And, emailing the Summons and Complaint to a defendant does not satisfy Rule 4's requirements for proper service.

To determine whether the counter-notice waives formal service of process, the Court turns to the statute's legislative history and relevant caselaw. The legislative history of the statute does not clarify whether the counter-notice waives process. The Senate Report states that "Subsection (g) creates a procedure by which copyright owners or their authorized agents who have submitted

6

or will submit a request for notification satisfying the requirements of subsection (c)(3)(A) may obtain an order for identification of alleged infringers who are users of a service provider's system or network." It appears that the purpose of this subsection was to identify alleged copyright infringers, not to supplant the formal service requirements of the Federal Rules.

Turning to caselaw, the Court has only found 13 cases that have cited to 17 U.S.C. § 512(g)(3)(D). Not one of the 13 cases stands for the proposition that the filing of a counter-notices, without more, permits service via email on a foreign corporation.

Two of the cases that cite to the statute reject the argument Plaintiff is advancing. In *Wrinkled Surface Enterprises LLC v. Gurianov*, the Southern District of New York plainly rejected the argument that § 512(g)(3)(D)'s requirement that parties filing a counter-notice waives service requirements. No. 19-CV-8882 (JPO), 2021 WL 142280, at *1 (S.D.N.Y. Jan. 15, 2021). Likewise, in *Xcentric Ventures, LLC v. Karsen, Ltd*, the District of Arizona rejected the argument that a counter-notice waives service of process requirements. No. CV 11-1055-PHX-FJM, 2011 WL 3156966, at *2 (D. Ariz. July 26, 2011). The Court held that "[w]hile defendant did agree to accept service of process when it filed the counter-notice, plaintiff was unsuccessful in serving defendant by conventional means at its Russian address. Service by alternative methods, such as email, is only effective after court approval." *Id*.

Two of the cases that cited 17 U.S.C. § 512(g)(3)(D) were orders granting motions for alternative service. In both cases, the plaintiff moved for alternative service even though the defendant had already filed a counter-notice, suggesting that the counter-notice does not waive formal service requirements. *Popparties LLC v. Jiao*, No. 2:22-CV-00469-TL, 2022 WL 17324306, at *1 (W.D. Wash. Nov. 29, 2022); *Epic Games, Inc. v. Mendes*, No. 17-CV-06223-LB, 2018 WL 582411, at *1 (N.D. Cal. Jan. 29, 2018). And in one case, the plaintiff effectuated proper service pursuant to the Federal Rules of Civil Procedure, notwithstanding the defendant's

filing of a counter-notice. *Melendez v. Vaiana*, No. EDCV-16-2516-JGB, 2017 WL 8183139, at *2 (C.D. Cal. Oct. 19, 2017). The remaining cases that cited to the subsection of the statute did not address service or did not make a determination regarding service.[3]

While the counter-notice that Defendant filed included a statement that Defendant would "accept service of process from [Plaintiff]," Federal Rule of Civil Procedure 4 sets forth how complaints must be served. In relevant part, Rule 4(h) provides that, "[u]nless federal law provides otherwise," service of process on a corporation in a foreign country must occur "in any manner prescribed by Rule 4(f)." Fed. R. Civ. P. 4(h). As relevant here, Rule 4(f) permits service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents [("Hague Service Convention"), Nov. 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638];
>
> ... or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

India, where Defendant is located, and the United States are both parties to the Hague Service Convention. Accordingly, Rule 4(h) permits Plaintiff to serve Defendant through the Hague Service Convention. "The primary means by which service is accomplished under the

---

[3] *BMaddox Enterprises LLC v. Oskouie*, No. 17-CIV-1889-RAH-BP, 2017 WL 9534738, at *3 (S.D.N.Y. Sept. 8, 2017), *report and recommendation adopted*, No. 17-CV-1889 (RA), 2017 WL 4797906 (S.D.N.Y. Oct. 23, 2017); *Crunchyroll, Inc. v. Pledge*, No. C 11-2334 SBA, 2014 WL 1347492, at *7 (N.D. Cal. Mar. 31, 2014); *Moore v. Donahoe*, No. C 11-05517 LB, 2013 WL 322561, at *6 (N.D. Cal. Jan. 28, 2013); *Moore v. Donahoe*, No. C 11-05517 LB, 2012 WL 4742813, at *9 (N.D. Cal. Oct. 3, 2012); *Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333, 340 (D. Mass. 2013); *Dudinikov v. Chalk & Vermillion Fine Arts, Inc.*, No. 05-CV-02505-WDM-OES, 2006 WL 8445818, at *1 (D. Colo. Sept. 14, 2006), *rev'd and remanded sub nom. Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008); *Doe v. Geller*, 533 F. Supp. 2d 996, 1011 (N.D. Cal. 2008); *Real v. Matteo*, No. CV 17-01288, 2018 WL 493596, at *3 (W.D. La. Jan. 3, 2018), *report and recommendation adopted*, No. CV 6:17-01288, 2018 WL 494271 (W.D. La. Jan. 19, 2018).

Convention is through a receiving country's Central Authority." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004); *see also* Hague Convention art. 2. Each signatory country is required to designate a Central Authority to receive documents from other member countries. *Id.* The Central Authority is required to effect service in its country once it receives compliant service documents. *Id.* Here, Plaintiff provides no argument that she properly served Defendant pursuant to the Hague Service Convention. And, emailing Summons and a Complaint does not satisfy the Hague Service Convention's service requirements.

Lastly, the Court notes that constitutional due process requires that litigants have notice of an action brought against them and an opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). Thus, after a complaint is filed, a "plaintiff is responsible for having the summons and complaint served" on a defendant. Fed. R. Civ. P. 4(c). "[T]he fundamental purpose of service is 'to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff and therefore, to vest jurisdiction in the court entertaining the controversy.'" *Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 953 (Fla. 2001) (citation omitted).

Here, the Court has no indication that Defendant has actually received notice of the Instant Action. Defendant's filing of the counter-notice suggests that Defendant is aware of the notice Plaintiff filed. However, it does not suggest that Defendant is aware of the Instant Action. Plaintiff has provided no argument suggesting that Defendant knows about the Instant Action, or that Defendant is evading service. Indeed, having affirmatively filed a counter-notice and yet not having answered the complaint permits an inference that the reason defendant has not answered the complaint is not because he has defaulted but because he is not aware of the suit. The Court is

not satisfied that Defendant has notice of the Instant Action to comport with the constitutional due process requirements.

The Court finds that Plaintiff has not properly served Defendant and Defendant has not received notice in the instant matter. Accordingly, Plaintiff must properly serve Defendant pursuant to the Federal Rules of Civil Procedure or move for alternative service of process before the Court enters a preliminary injunction against Defendant.

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Magistrate Judge Louis's Report and Recommendation (ECF No. 20) is ADOPTED. Plaintiff's Motion (ECF No. 6) is GRANTED IN PART. Accordingly, it is further ORDERED AND ADJUDGED that:

1. Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing or using the copyrighted Work, or any substantially similar works, other than those actually manufactured or distributed by Plaintiff; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the copyrighted Work, or any substantially similar works; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the copyrighted Work, or any substantially similar works; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive

possession of, or owned, controlled, or held by, or subject to access by, Defendant, including, but not limited to, any assets held by or on behalf of Defendant;

   c.  From copying, displaying, distributing, or creating derivative works of Plaintiff's copyrighted Work.

   2.  Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the copyrighted Work, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by Defendant.  This Order is limited to Defendant's listings using the copyrighted Work or substantially similar works, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by Defendant, including the Internet based e-commerce stores operating on Amazon.com and Etsy.com.

   3.  Defendant shall not transfer ownership of its e-commerce stores during the pendency of this TRO.

   4.  Upon receipt of notice of this Order, Defendant and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon Payments, Inc. ("Amazon"), PayPal.com, Inc. ("PayPal"), and Etsy.com, Inc. ("Etsy") and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with Defendant; (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; and (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto.

5. Upon receipt of notice of this Order, Defendant and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon, PayPal, and Etsy, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to.

6. No funds restrained by this Order shall be transferred or surrendered by Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, PayPal, Etsy, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

7. Defendant may not transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, PayPal, Etsy, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

8. Defendant or any financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

9. This Order shall remain in effect for FOUTEEN (14) DAYS unless before that time the Court, for good cause, extends it for a like period or Defendant consents to a longer extension.

10. Pursuant to 17 U.S.C. § 503(a)(3) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of TWENTY THOUSAND DOLLARS AND ZERO CENTS ($20,000.00), as payment of damages to which Defendant may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court, and

in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

11.     Defendant shall have FIVE (5) BUSINESS DAYS to comply with this Temporary Restraining Order following notice.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of March, 2023.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record